**RUSING LOPEZ & LIZARDI, P.L.L.C.**
6363 North Swan Road, Suite 151
Tucson, Arizona 85718
Telephone: (520) 792-4800
Facsimile: (520) 529-4262
mdlammers@rllaz.com
pscalf@rllaz.com

Mark D. Lammers
State Bar No. 010335
Paige E. Scalf
State Bar No 036959.
*Attorneys for Plaintiff Jay Rosenstein*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| Jay Rosenstein, | NO. |
|---|---|
| Plaintiff, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| vs. | |
| Turning Point USA, Inc., | (Assigned to _____) |
| Defendant. | |

Pursuant to Fed. R. Civ. P. 8, Plaintiff, Jay Rosenstein ("Plaintiff" or "Rosenstein"), alleges against Defendant, Turning Point USA Inc. ("Defendant"), as follows.

## THE PARTIES

1. Plaintiff, Jay Rosenstein, is an Emeritus Professor, Media & Cinema Studies at the University of Illinois, Urbana. Rosenstein is an award-winning journalist and filmmaker, whose films have appeared in important venues such as Public Broadcast Service (PBS) series and the Sundance Film Festival. Rosenstein's work particularly emphasizes social justice issues.

2. Defendant, Turning Point USA ("TPUSA"), is an American nonprofit organization that pushes conservative agendas in secondary and post-secondary educational institutions. It does this by influencing student elections, promulgating and publishing provocative claims calculated to incite outrage, and coordinating protests that mock social justice agendas. For example, student members of the Kent State chapter of Turning Point USA dressed up as diaper wearing babies to protest campus "safe-space culture" in 2017.

3. In 2016, TPUSA launched Professor Watchlist, a website that "outs" academics who allegedly "discriminate against conservative students and advance leftist propaganda in the classroom." Professor Watchlist also claims to be a "carefully aggregated list sourced by published news stories detailing radical behavior among college professors." *See* **Exhibit A**, Professor Watchlist, Exposing Bias on Campus, https://www.professorwatchlist.org/ (last visited July 22, 2024). Professor Watchlist states that "Factual Integrity and Sourced Accounts are Critical to the Mission of Professor Watchlist" and "we only publish profiles on incidents that have been reported and published via a credible source" *See* **Exhibit B**, Professor Watchlist, About Us , https://www.professorwatchlist.org/aboutus (last visited June 24, 2024).

4. In fact, mainstream media investigations reveal that the statements made by the Professor Watchlist about professors are often inaccurate and it reports incidents unrelated to propagandizing of or discrimination against a political viewpoint. The New York Times reports that TPUSA openly admits that no evidence is required to report a professor to the "Watchlist."  On at least three occasions, professors report that postings about them on "Professor Watchlist" have led to them being threatened with physical violence.

## JURISDICTION, VENUE, TIER

5. Jay Rosenstein resides in Champaign, Illinois and Brooklyn, New York.

6. Turning Point USA, Inc. is a 501(c)(3) non-profit organization founded in 2012 and organized under the laws of Indiana.

7. Defendant's headquarters address in Maricopa County, Arizona is 4940 East Beverly Road, Phoenix, Arizona 85044.

8. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

9. Venue is proper in this case under 28 U.S.C. § 1391(b)(1-2) because the defendant resides in the District of Arizona and a substantial portion of events giving rise to the claim took place in the District of Arizona.

## FACTUAL ALLEGATIONS

10. In 1996, Rosenstein completed a documentary film entitled "In Whose Honor?"

11. The film follows the story of Charlene Teters, a Native American mother from Spokane, who attended graduate school at the University of Illinois, Urbana-Champaign in the late 80s and early 90s. During that time, Teters encountered the University of Illinois mascot, "Chief Illiniwek," who appeared at college athletic events. "Chief Illiniwek" was played by a student who wore faux Native face paint and Sioux regalia. Her distress about this stereotype portrayal caused Teters to become the leader of a national movement that campaigned for the retirement of Native American names and figures as mascots and nicknames of American athletic teams (the "anti-mascot movement").

12. The film premiered nationally on the Public Broadcasting Service's "Point of View" program on July 15, 1997.

13. The film catalyzed the anti-mascot movement throughout collegiate and professional sports.

14. On August 5, 2005, the National Collegiate Athletic Association issued guidelines prohibiting NCAA schools from displaying "hostile and abusive racial/ethnic/national origin Native mascots" (the "Mascot Policy").

15. Consistent with the Mascot Policy, the University of Illinois retired Chief Illiniwek on February 21, 2007.

16. But an "Unofficial Chief Illiniwek" continued to make unauthorized appearances at University of Illinois events through at least 2018.

17. Two sponsors of these appearances were the organizations "Students for Chief Illiniwek" at the University of Illinois and the "Honor the Chief Society."

18. "Students for Chief Illiniwek" describes itself as a "progressive registered student organization that supports the education of students and the surrounding community on the subject of Chief Illiniwek and related symbolism, and their right to free expression of support."

19. The "Honor the Chief Society" describes itself as a community organization "dedicated to the preservation of Positive Native American Symbolism."

20. Ivan Dozier ("Dozier") attended the University of Illinois, Urbana from 2010 until 2016.

21. While a student, Dozier was a member of "Students for Chief Illiniwek."

22. "Students for Chief Illiniwek" named Dozier the "Unofficial Chief Illiniwek" in 2010.

23. As such, Dozier dressed up in a Native American costume and face paint and appeared at various Illinois sporting events of his choice.

24. In or around 2015, Dozier stopped serving as the Unofficial Chief Illiniwek. A new Unofficial Chief Illiniwek, Omar Cruz, was selected at this time.

25. Rosenstein witnessed and filmed appearances by Dozier and Cruz as the "Unofficial Chief Illiniwek" at multiple sporting events.

26. Dozier received a bachelor's degree in Agronomy and Crop Science from the University of Illinois in 2013. He completed his studies at the University of Illinois when he received a master's degree in Crop Sciences in 2016.

27. After graduating from the University of Illinois, Dozier joined the "Honor the Chief Society" and served as its president. He continues to serve as its president as of 2024.

28. On the evening of January 22, 2018, Rosenstein attended an Illinois basketball game at the State Farm Center in Champaign, Illinois.

29. Rosenstein believed that the Unofficial Chief Illiniwek would make an appearance at that basketball game.

30. Rosenstein believed that employees of the State Farm Center were helping to facilitate the appearances of the Unofficial Chief Illiniwek in various ways.

31. Such assistance by University of Illinois employees would violate university policy and its agreements with the NCAA, as well as violating NCAA guidelines prohibiting schools from displaying hostile mascots.

32. In his capacity as a journalist, Rosenstein intended to investigate whether state employees were in fact providing such assistance.

33. Rosenstein believed that a restroom at the State Farm Center was a staging area for unauthorized appearances by the Unofficial Chief Illiniwek (the "Staging Restroom").

34. To determine whether university employees were assisting in the unauthorized appearances of the "Unofficial Chief Illiniwek," Rosenstein entered the Staging Restroom.

35. In case photographic proof was necessary to support the results of his investigation, Rosenstein used his mobile phone to make a video, while he entered the Staging Restroom.

36. Inside, Dozier was washing his hands at a sink.

37. Mr. Dozier's father saw Rosenstein and rushed out to alert security before Rosenstein had taken no more than three steps into the Staging Restroom.

38. After no more than fifteen seconds, Rosenstein left the Staging Restroom.

39. Under Illinois law, making a video in a restroom is not permitted.

40. A responding University of Illinois police officer interviewed Dozier and his father that night.

41. Both men lied to the police officer and said that Plaintiff had filmed Dozier while he was using a urinal, according to the officer's police report.

42. The police officer arrested Rosenstein.

43. A police report documents the activity contemporaneous with the arrest. *See* **Exhibit C**, Police Report.

44. According to the Police Report, Offense / Crime Code "1261 UNAUTHORIZED VIDEOTAPING / LIVE VIDEO" was the reason Plaintiff was arrested.

45. The Police Report further states that, "Sgt. Moore advised, via radio, that [Rosenstein] was to be placed under arrest for Unauthorized Video Recording.

46. The Police Report further specifies that the offense for which Rosenstein was arrested was violation of Illinois Revised Statutes, Chapter 720, Act 5, Title III, Part D, Article 26, entitled "Unauthorized video recording and live video transmission."

47. On January 23, 2018, multiple local and national news sources described the arrest, include the information that the charge was "Unauthorized Videotaping."

48. Later that night, Dozier lied in a post to his Facebook page, falsely claiming that Rosenstein filmed him while he was standing at a urinal.

49. Dozier repeated his lie in media interviews.

50. All charges against Rosenstein were dropped at 9AM the morning following his arrest by the Champaign (IL) County States Attorney.

51. Dozier's lies had already metastasized on social media and in the press.

52. Dozier filed a civil action falsely accusing Rosenstein of obtaining video of him while he was using a urinal.

53. Dozier was deposed during that civil action on March 6, 2021.

54. Dozier admitted during deposition that he had never seen Rosenstein film him while he was using a urinal.

55. Dozier admitted that when he encountered Rosenstein in the Staging Restroom, he was fully clothed and standing at a sink washing his hands.

56. Several news publications, include the Champaign Urbana News Gazette (May 10, 2023) and Medium (April 11, 2023) carried news stories detailing Dozier's admissions during deposition that he was fully clothed and not using the urinal when Rosenstein filmed him. See **Exhibit D**, Pressy, D., Bathroom videotaping episode in Chief Illiniwek dispute inching toward trial, Champaign-Urbana News Gazette (May 20, 2023), https://www.news-gazette.com/news/local/courts-police-fire/bathroom-videotaping-episode-in-chief-illiniwek-dispute-inching-toward-trial/article_20e76ada-c7ed-501d-8e1c-7b021e7144b1.html (lasted visited Jul 22, 2024); **Exhibit E**, Rosenstein, J., Former Chief Illiniwek Ivan Dozier, who accused a U of I professor of filming him while urinating, confesses under oath it never happened, Medium, (April 22, 2023), https://medium.com/@jayrosenstein/former-chief-illiniwek-ivan-dozier-who-accused-a-u-of-i-professor-of-filming-him-while-urinating-6e9566f24eb0.

57. Before September 21, 2020, TPUSA posted to their Professor Watchlist website the "mug shot" picture of Rosenstein, his name, his university affiliation, and a statement that "Jay Rosenstein is a Professor of Media and Cinema Studies at the University

of Illinois – Urbana Champaign. Rosenstein was arrested on January 22, 2018 for illegally filming a student who was using the urinal." See **Exhibit F**, https://web.archive.org/web/20200921150038/https://professorwatchlist.org/professor/jayrosenstein.

58. Upon information and belief, Turning Point USA modified the webpage containing this post multiple times before June 3, 2023, at one point removing the caption containing his university affiliation.

59. On information and belief, on about September 21, 2023, Turning Point USA re-added the caption stating Rosenstein's university affiliation and modified the post to read "Jay Rosenstein is a Professor Emeritus of Media and Cinema Studies at the University of Illinois – Urbana Champaign. Rosenstein was arrested on January 22, 2018 for illegally filming a student who was using the urinal." (the "Defamatory Statement").

60. Sometime after November 30, 2023, TPUSA modified the webpage containing the defamatory statement and thereby republished it. See **Exhibit G**, Professor Watchlist, Jay Rosenstein, https://www.professorwatchlist.org/professor/jayrosenstein (July 22, 2024).

61. TPUSA's Defamatory Statement was defamation per se because it damaged Rosenstein in his trade, occupation, and/or business, and they were defamatory on their face without reference to any extrinsic information.

62. The Defamatory Statement has caused Rosenstein emotional pain and suffering as well as injury to his reputation, honor, and dignity.

63. Rosenstein has suffered professional harm as a direct result of TPUSA's Defamatory Statement because his reputation, discretion, and credibility are crucial to his success as a professor, journalist and filmmaker.

64. Rosenstein has suffered professional harm as a result of TPUSA's Defamatory Statement because academic institutions would understandably be reluctant to hire a faculty member reputed to have committed a sex crime against a student.

65. Since TPUSA published its Defamatory Statement, Rosenstein has applied for faculty positions but not received an interview, despite being internationally renowned as a filmmaker, journalist, and teacher.

66. By its own admission, TPUSA "carefully aggregates" the information it publishes; it therefore published the Defamatory Statement with reckless disregard for the truth or actual malice.

## COUNT I
### Defamation Per Se

67. Rosenstein incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

68. Sometime on or about September 21, 2023, Defendant republished on its website, viewable to the entire world, a statement that Rosenstein was arrested for "illegally filming a student who was using a urinal."

69. Sometime after November 30, 2023, Defendant republished on its website, viewable to the entire world, a statement that Rosenstein was arrested for "illegally filming a student who was using a urinal."

70. The statement was viewed by multiple third parties.

71. That statement is false because Rosenstein was arrested for violation of Illinois Revised Statutes, Chapter 720, Act 5, Title III, Part D, Article 26, entitled "Unauthorized video recording and live video transmission" not for "illegally filming a student who was using a urinal."

72. The Statement is false because according to his own statements under oath, Dozier was fully clothed and not using the urinal when Rosenstein filmed him.

73. The Statement is false because Dozier was not a student when Rosenstein filmed him.

74. At the time TPUSA republished the Defamatory Statement, TPUSA knew or recklessly disregarded that it was false, because TPUSA acknowledges that it "carefully" aggregates its information from reliable news sources, and multiple nationally distributed news sources had correctly described the violation for which Rosenstein was arrested, that Dozier was not a student at the time of the filming, and that Dozier recanted under oath his allegation that Rosenstein filmed him while he was undressed or using the urinal.

75. TPUSA acted with actual malice because its intent is to do harm to the "left leaning" professors it includes on "Professor Watchlist."

76. Defamatory Statement was defamation per se because it stated that Rosenstein, a professor, committed a sex crime against a student, thereby imputing to him a crime of moral turpitude and injuring him in his profession.

77. TPUSA's Defamatory Statements caused Rosenstein to suffer reputational, emotional, and professional harm, as alleged above.

## COUNT II
### False Light Invasion of Privacy

78. Rosenstein incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

79. The Defamatory Statement clearly refers to Rosenstein because it is posted under a picture of him and uses his name.

80. It would be highly offensive to any reasonable person to be identified as filming a student using a urinal.

81. The Defamatory Statement was highly inaccurate because Dozier was neither a student nor using the urinal and was fully clothed when Rosenstein filmed him.

82. At the time TPUSA republished the Defamatory Statement, TPUSA knew or recklessly disregarded that it was false because TPUSA acknowledges that it "carefully" aggregates its information from reliable news sources, and multiple nationally distributed news sources had correctly described the violation for which Rosenstein was arrested, Dozier's lack of student status at the time of the filming, and Dozier's under oath admission that he was neither using a urinal nor in anyway undressed while Rosenstein was filming him.

83. TPUSA acted with actual malice because its intent is to do harm to the "left leaning" professors it includes on "Professor Watchlist."

## DEMAND FOR JURY TRIAL

84. Plaintiff demands a Jury Trial for the causes of action listed above.

WHEREFORE, Plaintiff requests the Court award him judgment against Defendant as follows:

A. Order TPUSA to de-publish the Defamatory Statement;

B. Actual damages in an amount to be proven at trial but no less than $75,001;

C. Presumed damages in an amount to be determined by a jury;

D. Punitive damages in an amount to be determined by a jury;

E. Costs, pre and post-judgment interest; and

F. Such other relief this Court may deem just and proper to award.

DATED this July 22, 2024.

**RUSING LOPEZ & LIZARDI, P.L.L.C.**

*/s/ Paige E. Scalf*
Mark D. Lammers
Paige E. Scalf
*Attorneys for Plaintiff*